| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br>ROSEANN CRAWLEY,<br><br>                            Plaintiff,<br><br>                  v.<br><br>MACY'S RETAIL HOLDINGS, INC.,<br><br>                           Defendant.<br>------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: May 25, 2017<br><br>15 Civ. 2228 (KPF)<br><br>OPINION AND ORDER |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Roseann Crawley's dispute with Defendant Macy's Retail Holdings, Inc. continues. In *Crawley* v. *Macy's Retail Holdings, Inc.*, No. 15 Civ. 2228 (KPF), 2016 WL 6993777 (S.D.N.Y. Nov. 29, 2016) ("*Crawley I*"), this Court granted in part Defendant's motion to dismiss Plaintiff's gender-discrimination Complaint. The Court concluded that Plaintiff had failed to state a claim for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), or the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 301 (the "NYSHRL"). However, the Court allowed Plaintiff's claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (the "EPA"), to go forward.

Defendant now moves, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 (the "FAA"), to compel arbitration of Plaintiff's EPA claim and to stay this case pending the outcome of that arbitration. Plaintiff opposes the motion, preferring that the instant case go forward. While cognizant of Plaintiff's

concerns, the Court finds that Plaintiff's EPA claim falls squarely within the parties' binding arbitration agreement, and thus grants Defendant's motion.

## BACKGROUND[1]

### A. Factual Background

*Crawley I* sets forth the history of the parties' dispute. In short, Crawley did not receive a pay raise in 2010, but a male co-worker did. *Crawley I*, 2016 WL 6993777, at *2. In 2013, Plaintiff demanded that Defendant submit to arbitration. *Id.* at *3. And in 2014, following an evidentiary hearing, an arbitrator concluded that Plaintiff was ineligible for a pay raise in 2010 because of workplace disciplinary issues. *Id.* Believing that Defendant had denied her that raise because of her gender, Plaintiff sued Defendant in this Court in 2015, seeking relief under Title VII, the NYSHRL, and the EPA. *Id.* After *Crawley I*, only Plaintiff's EPA claim remains. *Id.* at *9.

This Opinion has a different focus. When Plaintiff arbitrated her pay-raise dispute with Defendant in 2013 and 2014, she did so pursuant to

---

[1] This Opinion draws most of its facts from two declarations Defendant submitted in support of its instant motion and from those declarations' exhibits. The first declaration is the Declaration of Matthew Melody in Support of Defendant's Motion to Compel Arbitration and Stay Proceedings ("Melody Decl." (Dkt. #67)). Attached as exhibits to this declaration are a Solutions InSTORE Plan Document dated January 1, 2004 ("Solutions InSTORE Plan Document" (Dkt. #67-1)); a Solutions InSTORE brochure for new employees of Defendant ("Solutions InSTORE Brochure" (Dkt. #67-2)); a Solutions InSTORE Election Form ("Solutions InSTORE Election Form" (Dkt. #67-3)); and a transcript of a training video Defendant shows its new employees ("Training Video Tr." (Dkt. #67-6)). All of the documents attached as exhibits to the Melody Declaration were in effect on the day Defendant hired Plaintiff: September 9, 2004. (Melody Decl. ¶¶ 14-15).

The second declaration that this Opinion relies on is the Declaration of Ragunathan Veeraraghavan in Support of Defendant's Motion to Compel Arbitration and Stay Proceedings ("Veeraraghavan Decl." (Dkt. #68)). Attached as an exhibit to this declaration is Plaintiff's Solutions InSTORE New Hire Online Acknowledgement Form ("Pl. Solutions InSTORE Acknowledgement Form" (Dkt. #68-7)).

2

Defendant's internal alternative-dispute-resolution program: the Solutions InSTORE Early Dispute Resolution Program ("Solutions InSTORE"). Whether Plaintiff must revisit Solutions InSTORE to arbitrate her EPA claim turns principally on two issues. The first is the scope of the arbitration provision contained in Solutions InSTORE's governing document, the Solutions InSTORE Plan Document (the "Plan Document"). The second is whether Plaintiff agreed to be bound by that arbitration provision when Defendant hired her. The Court addresses each issue in turn.

### 1. The Scope of the Solutions InSTORE Plan Document's Arbitration Provision

Solutions InSTORE is "a comprehensive early dispute resolution program" designed to "resolve employment-related disputes as early and fairly as possible." (Melody Decl. ¶ 4). Defendant began developing Solutions InSTORE in 2003, and the program became effective on January 1, 2004 — over nine months before Defendant hired Plaintiff on September 9, 2004. (*Id.* at ¶¶ 4, 6, 14). Solutions InSTORE's terms are set forth in the Plan Document; Defendant revised the Plan Document in 2007 and 2014, but this Opinion focuses on the original 2004 version (i.e., the version in effect when Defendant hired Plaintiff). (*Id.* at ¶ 6).

Solutions InSTORE has four dispute-resolutions steps. At Step 1 ("Open Door"), Defendant's employees are encouraged to bring workplace disputes to "their immediate supervisors." (Plan Document 3). An employee dissatisfied "with the result of" Step 1 can proceed to Step 2 ("Review by the Office of Senior Human Resources Management"), pursuant to which a Human Resources

executive will render a written decision on the employee's grievance. (*Id.*). And if an employee is not satisfied with a Step 2 written decision, and if the employee's claim "involv[es] legally protected rights," that employee may move to reconsider the decision under Step 3 ("Request for Reconsideration"). (*Id.* at 4).

Step 4 of Solutions InSTORE "is binding arbitration before a neutral arbitrator and administered by the American Arbitration Association ('AAA')." (Melody Decl. ¶ 8; Plan Document 5). As set forth in the Plan Document, the breadth of claims subject to arbitration under Step 4 is vast:

> Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment shall be settled exclusively by final and binding arbitration[.]
>
> * * *
>
> All unasserted employment-related claims as of January 1, 2004 arising under federal, state or local statutory or common law shall be subject to arbitration. Merely by way of example, these claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), [and] the Fair Labor Standards Act (FLSA)[.]

(Plan Document 5-6; *see also id.* at 7 (reiterating that "[a]ny unasserted employment-related dispute as described in [the Plan Document], raised on or after [January 1, 2004,] must be arbitrated pursuant to these rules and procedures")).

4

Defendant does *not* require its employees to arbitrate employment-related disputes as a condition of their employment. Rather, participation in Step 4 "is voluntary": Within 30 days of being hired, Defendant's employees can opt out of participating in Step 4 by submitting an "Early Dispute Resolution Program Election Form" ("Solutions InSTORE Election Form") to Defendant's Office of Solutions InSTORE in Mason, Ohio. (Melody Decl. ¶ 10; Solutions InSTORE Election Form). But if an employee does not opt out of Step 4 by the end of this 30-day period, then he or she "agree[s] to use arbitration as the sole and exclusive means to resolv[e] any dispute regarding [his] employment" and "waive[s] the right to civil action and a jury trial." (Solutions InSTORE Brochure 10).

Defendant informs its employees about Solutions InSTORE, and the terms of arbitration under Step 4, through a variety of means. (Melody Decl. ¶ 15). In addition to receiving copies of the Plan Document, new employees receive a Solutions InSTORE New Hire Brochure (the "Solutions InSTORE Brochure"), which explains all four Solutions InSTORE steps; instructs employees who wish to opt out of Step 4 to submit a Solutions InSTORE Election Form within 30 days of being hired; and includes a copy of that form. (*Id.* at ¶¶ 16-19; *see* Solutions InSTORE Brochure). After receiving the Solutions InSTORE Brochure, new employees must "electronically sign a 'Solutions InSTORE New Hire Acknowledgement Form'" (the "Solutions InSTORE Acknowledgement Form"). (Melody Decl. ¶ 20; Veeraraghavan Decl. ¶ 4). By signing that form, an employee acknowledges:

5

> I have received a copy of [Defendant's] Solutions InSTORE brochure and understand that I have 30 days from my date of hire to review the information and postmark my form to the Office of Solutions InSTORE if I elect to decline the benefits of Step 4 of the program, Arbitration.

(Pl. Solutions InSTORE Acknowledgement Form 1). The Solutions InSTORE Acknowledgement Form also includes a hyperlink to a website that "provides ... information about the Solutions InSTORE Program." (Melody Decl. ¶ 21; Pl. Solutions InSTORE Acknowledgement Form 1).

Further, new employees view "a Solutions InSTORE new hire information video" that outlines Solutions InSTORE's four steps and explains that employees must opt out of Step 4 if they do not wish "to receive th[e] benefit" of arbitration. (Melody Decl. ¶ 23; Training Video Tr. 6).

### 2. Plaintiff's Agreement to Arbitrate Employment Disputes

Defendant hired Plaintiff to work at a retail store in Commack, New York, on September 9, 2004. (Melody Decl. ¶ 14). At 9:36 a.m. that morning, Plaintiff electronically signed a Solutions InSTORE Acknowledgement Form. (*Id.* at ¶ 20; Veeraraghavan Decl. ¶ 13; Pl. Solutions InSTORE Acknowledgement Form).

Plaintiff still works at Defendant's Commack store. (Melody Decl. ¶ 14). Plaintiff has never completed a Solutions InSTORE Election Form in order to opt out of Step 4 arbitration. (*Id.* at ¶ 26). To the contrary, Plaintiff availed herself of Step 4's procedures when she arbitrated the pay-raise dispute that gave rise to the instant litigation. (*Id.* at ¶ 28; *see generally Crawley I*, 2016 WL 6993777, at *2-3). And although Plaintiff has "contacted the Office of

Solutions InSTORE on numerous occasions with various complaints about her employment, she [has] never made any complaint regarding her inclusion in the arbitration portion of the [p]rogram." (Melody Decl. ¶ 27).

**B.     Procedural Background**

This Court issued *Crawley I* on November 29, 2016. (Dkt. #61). On January 13, 2017, Defendant filed the instant motion and supporting documents. (Dkt. #65-69). Plaintiff responded to that motion with a one-page letter that the Court received on February 14, 2017. (Dkt. #73). In that letter, Plaintiff wrote that she "oppose[s] arbitration and would like to stay in civil proceedings"; the letter cites no legal authority. (*Id.*). Briefing concluded when Defendant submitted a reply letter on March 6, 2017. (Dkt. #76).

## DISCUSSION

**A.     Applicable Law**

"The FAA makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Kindred Nursing Ctrs. Ltd. P'ship* v. *Clark*, — S. Ct. —, No. 16-32, 2017 WL 2039160, at *4 (U.S. May 15, 2017) (quoting 9 U.S.C. § 2)). Time and again, the Supreme Court has emphasized that the FAA "declare[s] a national policy favoring arbitration[.]" *Nitro-Lift Techs., L.L.C.* v. *Howard*, — U.S. —, 133 S. Ct. 500, 503 (2012) (per curiam) (quoting *Southland Corp.* v. *Keating,* 465 U.S. 1, 10 (1984)). "[T]his policy is founded on a desire to preserve ... parties' ability to agree to arbitrate, rather than litigate, disputes."

7

*Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Schnabel* v. *Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)).

"Under [Section Four of] the FAA, a party to an arbitration agreement may petition a district court for 'an order directing that ... arbitration proceed in the manner provided for in such agreement.'" *Katsoris* v. *WME IMG, LLC*, — F. Supp. 3d —, No. 16 Civ. 135 (RA), 2017 WL 775849, at *5 (S.D.N.Y. Feb. 27, 2017) (quoting 9 U.S.C. § 4)). "In deciding a motion to compel arbitration under the FAA, [a] [c]ourt must resolve four issues":

> [i] [I]t must determine whether the parties agreed to arbitration; [ii] it must determine the scope of that agreement; [iii] if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and [iv] if the court concludes that some, but not all, of the claims in the case are arbitrable, it must determine whether to stay the balance of the proceedings pending arbitration.[2]

*Zambrano* v. *Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *5 (S.D.N.Y. Sept. 22, 2016) (quoting *Genesco, Inc.* v. *T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)). Put simply, "[p]ursuant to the FAA, a district court must grant a motion to compel arbitration if a valid arbitration agreement exists and if the scope of the agreement governs the issues in the

---

[2] In *Katz* v. *Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), the Second Circuit concluded that "a stay of proceedings [is] necessary after *all* claims" in a case "have been referred to arbitration and a stay requested." *Katz*, 794 F.3d at 345 (emphasis added). But "*Katz* did not explicitly address whether the FAA requires a district court to stay all proceedings where ... fewer than all claims have been referred to arbitration." *Katsoris* v. *WME IMG, LLC*, — F. Supp. 3d —, No. 16 Civ. 135 (RA), 2017 WL 775849, at *13 (S.D.N.Y. Feb. 27, 2017). Because the Court has already dismissed two of Plaintiff's three claims, it need not consider *Katz*'s open question: By granting Defendant's motion to compel arbitration, the Court is ordering the parties to arbitrate *all* of Plaintiff's remaining claims. And as the Court will explain *infra*, *Katz* thus requires the Court to stay this case.

8

case." *Zambrana* v. *Pressler & Pressler, LLP*, No. 16 Civ. 2907 (VEC), 2016 WL 7046820, at *2 (S.D.N.Y. Dec. 2, 2016); *see also HDI Glob. SE* v. *Lexington Ins. Co.*, No. 16 Civ. 7241 (CM), 2017 WL 699818, at *4 (S.D.N.Y. Feb. 7, 2017) ("Section [Four] of the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (quoting *Lapina* v. *Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 283 (S.D.N.Y. 2015))).

"In deciding motions to compel [arbitration], courts apply a standard similar to that applicable for a motion for summary judgment." *Katsoris*, 2017 WL 775849, at *5 (internal quotation marks omitted) (quoting *Nicosia*, 834 F.3d at 229). "The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *HDI Glob.*, 2017 WL 699818, at *4 (internal quotation mark omitted) (quoting *Murray* v. *UBS Sec., LLC*, No. 12 Civ. 5914 (KPF), 2014 WL 285093, at *4 (S.D.N.Y. Jan. 27, 2014)). "Conversely, '[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" *Murray*, 2014 WL 285093, at *4 (quoting *Harrington* v. *Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). In evaluating whether the parties have made these showings, "[a] court must … 'consider all relevant, admissible evidence submitted by the parties' and 'draw all reasonable inferences in favor of the non-moving party.'" *Katsoris*, 2017 WL 775849, at *5 (quoting *Nicosia*, 834 F.3d at 229).

9

**B.     Analysis**

Plaintiff must arbitrate her EPA claim. Defendant has adduced ample evidence in support of its instant motion. That evidence unambiguously establishes that Plaintiff agreed to arbitrate any employment disputes with Defendant, including any disputes arising under the EPA. Even giving Plaintiff's letter opposition the liberal construction it is due, *see Lefebvre* v. *Morgan*, — F. Supp. 3d —, No. 14 Civ. 5322 (KMK), 2017 WL 564090, at *5 (S.D.N.Y. Feb. 10, 2017) ("[B]ecause Plaintiff is proceeding *pro se*, the Court must construe his pleadings liberally and interpret them to raise the strongest arguments that they suggest." (internal quotation marks and citations omitted)), Plaintiff has provided this Court no reason to question the validity of the parties' agreement to arbitrate. In sum, all four factors this Court must consider militate in favor of compelling arbitration and staying this case:

*First*, the parties entered into a binding arbitration agreement. "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Fleming* v. *Crew*, No. 16 Civ. 2663 (GHW), 2016 WL 6208570, at *3 (S.D.N.Y. Oct. 21, 2016) (quoting *Schnabel*, 697 F.3d at 119). New York law — which Defendant contends (and Plaintiff does not dispute) governs here — recognizes a "long-standing rule … that an arbitration clause in a written agreement is enforceable … when it is evident that the parties intended to be bound by the contract." *Fiveco, Inc.* v. *Haber*, 11 N.Y.3d 140, 144 (2008) (internal quotation marks omitted) (quoting *God's Battalion of Prayer Pentecostal Church, Inc.* v. *Miele Assocs., LLP*, 6 N.Y.3d 371, 373 (2006)). And this intent must be beyond

10

question: In New York, "[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." *Id.* (internal quotation marks omitted) (quoting *Miele Assocs.*, 6 N.Y.3d at 374).

Plaintiff and Defendant clearly, explicitly, and unequivocally agreed to arbitrate employment disputes. By signing a Solutions InSTORE Acknowledgement Form on the first day of her employment with Defendant, Plaintiff agreed to be bound by Step 4 unless she opted out of arbitration by completing a Solutions InSTORE Election Form within 30 days of her hiring date. Plaintiff never submitted a Solutions InSTORE Election Form. She therefore agreed to follow Step 4.

In *Teah* v. *Macy's Inc.*, No. 11 Civ. 1356 (CBA), 2011 WL 6838151 (E.D.N.Y. Dec. 29, 2011), Judge Amon of the Eastern District of New York confronted a nearly identical scenario: An employee of Defendant's, Prince Teah, electronically signed a Solutions InSTORE Acknowledgement Form after being hired, did not thereafter submit a Solutions InSTORE Election Form, then sued Defendant under Title VII. *Teah*, 2011 WL 6838151, at *1-2. In granting Defendant's motion to compel arbitration in that case, Judge Amon reasoned that Teah had "manifest[ed] his assent [to Step 4] by" signing the Solutions InSTORE Acknowledgement Form *and* by declining to complete a Solutions InSTORE Election Form. *Id.* at *5. That reasoning applies with equal force here. Put simply, Plaintiff and Defendant entered into an arbitration agreement.

11

*Second*, the scope of the parties' arbitration agreement explicitly encompasses Plaintiff's EPA claim. The Plan Document provides that claims arising under the Fair Labor Standards Act (the "FLSA") "shall be subject to arbitration." (Solutions InSTORE Plan Document 6). The EPA "was enacted as an amendment to the [FLSA]" and is part of that statute. *Lifrak* v. *N.Y.C. Council*, 389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005); *see* 29 U.S.C. § 206.

*Third*, there is no evidence that Congress intended claims arising under the EPA "to be nonarbitrable." *Zambrano*, 2016 WL 5339552, at *5 (quoting *Genesco*, 815 F.2d at 844); *see Steele* v. *L.F. Rothschild & Co.*, 701 F. Supp. 407, 408 (S.D.N.Y. 1988). The Court is mindful that "[t]he burden of showing ... legislative intent [to preclude arbitration] lies with the party opposing arbitration." *Arrigo* v. *Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304 (S.D.N.Y. 2010) (citation omitted) (concluding "that Congress did not intend FLSA claims to be non-arbitrable"), *aff'd*, 408 F. App'x 480 (2d Cir. 2011) (summary order). Plaintiff has made no such showing.

*Finally*, because Plaintiff's EPA claim is her only remaining claim in this suit, the Court must stay this case pending the outcome of the parties' arbitration. Although Defendant requests such a stay, it overlooks the fact that the Plan Document calls for a different outcome: "If a party files a lawsuit in court to resolve claims subject to arbitration, both [parties] agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program." (Solutions InSTORE Plan Document 7). But the Second Circuit's decision in *Katz* v. *Cellco Partnership*, 794 F.3d 341 (2d

Cir. 2015), makes plain that the FAA forbids a dismissal here. Per *Katz*: "[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz*, 794 F.3d at 347.

The Plan Document, however, contains a severability provision. It provides that any part of the Plan Document that is "held to be unlawful or unenforceable … shall be modified automatically to comply with applicable law," and that "[i]n the event of [such] an automatic modification … the remainder of [the Plan Document] shall not be affected." (Solutions InSTORE Plan Document 18). The version of the Plan Document that governs Plaintiff's employment relationship with Defendant was issued in 2004, over a decade before the Second Circuit decided *Katz*. And *Katz* forecloses that Plan Document's requirement that a court dismiss a case after referring all of the claims in that case to arbitration. Consequently, the Court concludes that this provision of the Plan Document is unenforceable, and modifies it to reach the same result Defendant requests: a stay.

## CONCLUSION

The Court is sympathetic to Plaintiff's expressed concerns about the arbitration process generally and her prior arbitration experience in particular. The Court expects that Defendant and the arbitrator will each do their part to ensure that Plaintiff is treated with dignity and that her claims are given appropriately thoughtful consideration. That said, the facts and law are clear that Plaintiff's claim must proceed to arbitration. Accordingly, and for the

reasons set forth above, Defendant's motion to compel arbitration and stay this case is GRANTED. This case is STAYED pending the resolution of the parties' arbitration. To this end, Defendant is ORDERED to file a letter with the Court **on or before June 26, 2017**, setting forth a timeline for the parties' arbitration.

The Clerk of Court is ORDERED to terminate Docket Entry 65.

SO ORDERED.

Dated: May 25, 2017
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Roseann Crawley
656 Veterans Highway
Apt. 1C
Hauppauge, NY 11788